IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **BRANCH BANKING AND TRUST COMPANY,** ] | |
| ] | |
| **Plaintiff,** ] | |
| ] | |
| v.  ] | 2:11-CV-2815-KOB |
| ] | |
| **KING, COTTON & SANDERS, P.C., ET AL.,** ] | |
| ] | |
| **Defendants.** | |

**MEMORANDUM OPINION**

This matter comes before the court on Plaintiff Branch Banking and Trust Company's "Motion for Summary Judgment" (doc. 38). Plaintiff BB&T brought this case to collect amounts past due on two promissory notes and a credit card agreement. For the reasons stated in this Memorandum Opinion, the court will GRANT Plaintiff's Motion for Summary Judgment because no genuine issues of material fact exist, and BB&T is entitled to judgment as a matter of law.

I.   STATEMENT OF FACTS

   A.   Factual Background

This case arises out of three financial agreements between BB&T and Defendant King, Cotton, & Sanders, P.C., an accounting firm ("the Borrower"), that began in February 2007. The Borrower failed to pay the debts it owed to BB&T, and the obligation then fell on the guarantors, who also failed to pay the accounting firm's debts. On February 1, 2007, BB&T entered into a commercial credit card agreement with the Borrower. Larry S. King and Defendant Mark T.

1

Cotton both signed the agreement, as Directors of the Borrower. As provided in the document, Georgia law governs the agreement. In an separate transaction, on September 13, 2007, the Borrower executed and delivered a promissory note ("the September Note") to BB&T pledging to pay BB&T the original principal amount of $175,000 plus interest and other amounts. On October 1, 2007, the Borrower executed and delivered a promissory note ("the October Note") to BB&T pledging to pay BB&T the original principal amount of $25,000 plus interest and other amounts. Larry S. King and Mark T. Cotton both signed both of the Notes, as Directors of the Borrower. As provided in the documents, Alabama law governs both of the Notes.

   In two separate guaranty agreements dated December 14, 2006 and October 1, 2007, Mr. Cotton and Mr. King personally and unconditionally guaranteed all of Borrower's current and future obligations to BB&T. The December 14, 2006 guaranty agreement was signed in contemplation of the Borrower's future loan agreements with the Bank. BB&T expressly relied on the personal guaranties in making both loans and providing a credit card to the Borrower. Mr. Cotton and Mr. King also individually guaranteed all of Borrower's obligations to BB&T under the credit card agreement. In both Note agreements, the Borrower agreed to pay reasonable attorneys' fees and all other costs and expenses incurred by BB&T in enforcing the Notes, and Mr. Cotton and Mr. King agreed to pay reasonable attorney's fees and all other costs and expenses incurred by BB&T in enforcing the Guaranties. BB&T is not required to seek payment from any other source before demanding payment from the guarantors.

   The September Note matured on November 2, 2009, and is in default for failure to make payment when due. At the time of filing the Motion for Summary Judgment, the amount owed pursuant to the September Note was $194,282.48 plus costs of collection and attorneys' fees. The

October Note matured on October 2, 2010, and is in default for failure to make payment when due. At the time of filing the Motion for Summary Judgment, the amount owed pursuant to the October Note was $19,404.11 plus costs of collection and attorneys' fees. The credit card agreement is in default for failure to make payment when due. At the time of filing the Motion for Summary Judgment, the amount owed pursuant to the credit card agreement was $34,225.49 plus costs of collection and attorneys' fees. BB&T has demanded payment from the Borrower and Mr. Cotton, but they have failed to satisfy their obligations to BB&T.

  B. State Court Procedural History

On February 6, 2009, in the Circuit Court of Calhoun County, Alabama, The Sanders Company of Anniston, P.C. filed a complaint against Mr. Cotton; Mr. King; King, Cotton & Sanders, P.C.; and BB&T alleging breach of contract, fraud, dissolution of corporation, and three other related counts. The Sanders Company acquired all of the Borrower's assets on January 1, 2007 under an Asset Purchase Agreement. The Sanders Company also entered into a Security Agreement to secure its obligation under the Asset Purchase Agreement that prohibited the Borrower from selling, leasing, encumbering, or disposing of the Borrower's assets without The Sanders Company's prior written consent.

The state court complaint alleged that Mr. Cotton violated the Asset Purchase Agreement with The Sanders Company by pledging King, Cotton & Sanders accounts receivable to BB&T without the written consent of The Sanders Company. Pursuant to the Asset Purchase Agreement, The Sanders Company now owns Mr. Cotton's shares in King, Cotton & Sanders.

The complaint alleges that Mr. Cotton knew at the time he pledged King, Cotton & Sanders' assets that he was without legal authority to do so and that BB&T entered into the loan

agreements without due diligence or verification that King, Cotton & Sanders actually existed or had taken the necessary corporate action to authorize borrowing and pledging of its assets by Mr. Cotton. The complaint further alleged that BB&T began "sweeping" King Cotton & Sanders' accounts after Mr. Cotton left the firm. In Count Six of the complaint, The Sanders Group seeks a declaratory judgment that BB&T is without any actual legal claim to the accounts receivable pledged by Mr. Cotton.

BB&T did not file any cross-claims against Mr. Cotton in the action instituted by The Sanders Company. On May 18, 2009, BB&T and The Sanders Company jointly stipulated to BBB&T's dismissal without prejudice from the lawsuit. Over two years later, on June 16, 2011, the remaining parties to the action jointly stipulated to "dismiss with prejudice all claims and counterclaims against all parties and all claims that could have been filed, but were not, against any party hereto by any other party." Doc. 44-1. BB&T was not a party to the action at the time of the dismissal order. The deadline for appeal of the June 16, 2011 order has expired.

  C. <u>District Court Procedural History</u>

On August 10, 2011, BB&T filed a complaint against Mr. Cotton, Mr. King, and King, Cotton & Sanders in the Northern District of Alabama alleging eleven counts: (1) breach of contract on the September Note; (2) account stated on the September note; (3) money lent on the September note; (4) breach of contract on the October note; (5) account stated on the October note; (6) money lent on the October note; (7) breach of contract on the credit card agreement; (8) account stated on the credit card agreement; (9) money lent on the credit card agreement; (10) breach of the guaranties; and (11) account stated on the guaranties (doc.1). On December 12, 2011, the court denied Mr. Cotton's Motion to Dismiss for failure to state a claim upon which

relief can be granted (doc. 25). On December 21, 2011, the court terminated Mr. King as a party under a Joint Motion for Entry of Consent Judgment (doc. 21). On July 2, 2012, BB&T filed a Motion for Summary Judgment as to the remaining Defendants, Mr. Cotton and King, Cotton, and Sanders that is the final motion pending before this court (doc. 38).

II.     STANDARD OF REVIEW

Summary judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. When a district court reviews a motion for summary judgment, it must determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). The moving party can meet this burden by offering evidence showing no dispute of material fact or by showing that the non-moving party's evidence fails to prove an essential element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–23.

Once the moving party meets its burden of showing the district court that no genuine issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Disagreement between the parties is not

significant unless the disagreement presents a "genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). In reviewing the evidence submitted, the court must "view the evidence presented through the prism of the substantive evidentiary burden," to determine whether the nonmoving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Commc'n, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). The court must refrain from weighing the evidence and making credibility determinations, because these decisions fall to the province of the jury. *See Anderson*, 477 U.S. at 255; *Stewart v. Booker T. Washington Ins. Co.*, 232 F.3d 844, 848 (11th Cir. 2000); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999).

Furthermore, all evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Graham*, 193 F.3d at 1282. The nonmoving party "need not be given the benefit of every inference but only of every reasonable inference." *Id.* The evidence of the non-moving party "is to be believed and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255. After both parties have addressed the motion for summary judgment, the court must grant the motion *if* no genuine issues of material fact exist *and if* the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

III.   DISCUSSION

BB&T, the plaintiff in this case, moves for summary judgment claiming that it is entitled to judgment as a matter of law. In his Response (doc. 44), Mr. Cotton argues that any judgment sought by BB&T is barred by the doctrine of res judicata. Mr. Cotton does not assert any genuine issue of material fact nor does he argue against the merits of any of the plaintiff's eleven counts

6

plead in the complaint.

    A.    <u>Res Judicata</u>

When considering a claim of res judicata, "federal courts employ the law of the state in which they sit." *Burr & Forman v. Blair*, 470 F.3d 1019, 1030 (11th Cir. 2006) (citing *NAACP v. Hunt*, 891 F.2d 1555, 1560 (11th Cir. 1990)). In Alabama, res judicata only exists as a bar to litigation when all four elements are present: "(1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both actions." *Greene v. Jefferson County Com'n.*, 13 So.3d 901, 910 (quoting *Chapman Nursing Home, Inc. v. McDonald*, 985 So. 2d 914, 919 (Ala. 2007) (quoting *Equity Res. Mgmt., Inc. v. Vinson*, 723 So. 2d 634, 636 (Ala. 1998))) (internal quotations omitted). Because the absence of any one of the four requirements bars the application of res judicata, the court considers the third element first. *NAACP v. Hunt*, 891 F.2d 1555, 1560 (11th Cir. 1990).

To meet the third element, the parties in the subsequent action must be identical or in privity with the parties in the previous action. *Wheeler v. First Alabama Bank of Birmingham*, 364 So. 2d 1190, 1200 (Ala. 1978). The Alabama Supreme Court has stated that, "the parties estopped by the [previous] judgment must have been litigants against one another [in the previous action]." *AAA Equipment & Rental, Inc. v. Bailey*, 384 So. 2d 107, 109 (Ala. 1980). This requirement of "adversariness" means that a defendant in the previous litigation cannot be barred from litigating against a co-defendant in a subsequent litigation. *Id.* at 109-110.  BB&T is not barred from bringing this suit against Mr. Cotton and King, Cotton & Sanders because they were co-defendants in the previous state court action, not litigants against one another.  Because

no substantial identity of parties exists in this action, the doctrine of res judicata does not apply and does not preclude BB&T from bringing this suit.

B.  Substantive Claims

The material facts in this case are undisputed, and the defendant did not raise any defenses in his response other than res judicata. Because res judicata does not bar the action, the court considers BB&T's substantive claims for relief to determine whether the court the Borrower is entitled to judgment as a matter of law.

1.  Breach of Contract, Account Stated, and Money Lent

The court considers the September and October Notes together because the Notes are identical, and Alabama law governs both Notes.  In Alabama, a plaintiff can recover on a breach of contract claim if he can prove four elements: "(1) the existence of a valid contract binding upon the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages." *Employees' Benefit Ass'n v. Grissett*, 732 So. 2d 968, 975 (Ala. 1998).  The elements for a valid contract are "an offer and an acceptance, consideration, and a mutual assent to the essential terms of the agreement." *Armstrong Business Services, Inc. v. AmSouth Bank*, 817 So. 2d 665, 673 (Ala. 2001) (citing *Hargrove v. Tree of Life Christian Day Care Ctr.*, 699 So. 2d 1242, 1247 (Ala. 1997)).

The September and October Notes are valid contracts executed by Mr. Cotton and Mr. King as Directors of King, Cotton & Sanders and are signed as such. Doc. 1, ex. A.  The September Note states that the Borrower "promises to pay to [BB&T] . . . the sum of one hundred seventy-five thousand dollars." Doc. 1, ex. A.  The October Note states that the Borrower "promises to pay to [BB&T] . . . the sum of twenty-five thousand dollars." Doc. 1, ex.


B. BB&T performed under the contract by loaning money to the Borrower. Borrower failed to perform under the contract by failing to pay the amounts due on the Notes. BB&T suffered monetary damages from the breach in the form of the unpaid loan balances. As of the time of filing the motion for summary judgment, BB&T claimed $213,686.59 in damages on the Notes collectively. The Borrowers do not contest any of these facts, and the court finds BB&T is entitled to judgment as matter of law on Counts I and IV of its complaint.

The credit card agreement is governed by Georgia law. In Georgia, a plaintiff can recover on a breach of contract claim if he can prove, "the breach and the resultant damages to the party who has the right to complain about the contract being broken." *Bartholomew v. AGL Res. Inc.*, 361 F.3d 1333, 1339 (11th Cir. 2004) (*citing Budget Rent-A-Car of Atlanta, Inc. v. Webb*, 220 Ga.App. 278, 469 S.E.2d 712, 713 (1996)). Thus, BB&T must prove the existence of a valid contract, a breach of that contract, and damages resulting from the breach. *Budget,* 220 Ga.App. at 278, 469 S.E.2d at 713.

The credit card agreement is a valid contract executed by Mr. Cotton as a Director of King, Cotton & Sanders and are signed as such. Doc.1, ex. A. The credit card agreement states that in the event of default, "BB&T may declare the Outstanding Balance immediately due and payable." Doc.1, ex. C. One of these delineated events of default is failing to make timely periodic payments when due. *Id.* Borrower breached the contract by failing to pay BB&T the amounts due on the account. BB&T suffered monetary damages from the breach in the form of the unpaid credit card balance. As of the time of filing the motion for summary judgment, BB&T claimed $34,225.49 in damages on the credit card agreement. The Borrowers do not contest any of these facts, and the court finds BB&T is entitled to judgment as matter of law on Count VII of

its complaint.

Because BB&T is entitled to summary judgment on the breach of contract claims, the court will not consider BB&T's alternate claims for account stated and money lent. Thus, the court does not consider Counts II, III, V, VI, VIII, and IX of the complaint.

      2.      Breach of Guaranty

Alabama law governs the guaranty of the September and October Notes made by Mr. Cotton. Because a guaranty agreement is a contract, the elements for a breach of guaranty claim are the same as those for a breach of contract claim: "(1) the existence of a valid contract binding upon the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages." *Grissett*, 732 So. 2d at 975.  The elements for a valid contract are "an offer and an acceptance, consideration, and a mutual assent to the essential terms of the agreement." *Armstrong*, 817 So. 2d at 673.

Here, the guaranty agreement provided that the guarantor "absolutely and unconditionally guarantees to Bank . . . due and punctual payment of any and all note . . . obligations and liabilities . . . incurred with or held by the Bank." Doc. 1, ex. D. The guaranty is a valid contract executed by Mr. Cotton and Mr. King individually and is signed as such. Doc. 1, ex. D.  Mr. Cotton does not dispute the validity of the guaranty as a binding contact under the law. Mr. Cotton breached the guaranty by failing to pay the sums due on the Notes when they became due. BB&T suffered damages from the breach in the amount of the outstanding balances on both Notes. As of the time of filing the motion for summary judgment, BB&T claimed $213,686.59 in damages on the guaranties of the Notes collectively.

Georgia law governs the guaranty of the credit card agreement made by Mr. Cotton. In

Georgia, a plaintiff can recover on a breach of contract claim if he can prove, "the breach and the resultant damages to the party who has the right to complain about the contract being broken." *Bartholomew,* 361 F.3d at 1339. Thus, BB&T must prove that the guaranty is a valid contract, a breach of that contract, and damages resulting from the breach. *Budget,* 220 Ga.App. at 278, 469 S.E.2d at 713.

Here, the guaranty provided that the guarantor "absolutely and unconditionally guarantees to Bank . . . due and punctual payment of any and all note . . . obligations and liabilities . . . incurred with or held by the Bank." Doc. 1, ex. B. The guaranty is a valid contract executed by Mr. Cotton and Mr. King individually and is signed as such. Doc. 1, ex. B. Mr. Cotton does not dispute the validity of the guaranty as a binding contact under the law. Mr. Cotton breached the guaranty by failing to pay the sums due on the Notes when they became due. BB&T suffered damages from the breach in the amount of the outstanding balances of the credit card agreement. As of the time of filing the motion for summary judgment, BB&T claimed $34,225.49 in damages on the credit card agreement guaranty. Neither the Borrower nor Mr. Cotton contest any of these facts, and the court finds BB&T is entitled to judgment as matter of law on Count X of its complaint, and Mr. Cotton is personally liable for the amount due on the September Note, the October Note, and the credit card agreement, which was $247,912.08 at the time of filing the motion for summary judgment.

Because BB&T is entitled to summary judgment on the breach of guaranty claim, the court will not consider BB&T's alternate account stated claim. Thus, the court does not consider Count XI of the complaint.

IV.	CONCLUSION

For the reasons stated above, the court will GRANT BB&T's motion for summary judgment. The court will simultaneously enter a separate order to that effect.

DONE and ORDERED this 19th day of September, 2012.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE